## In the Matter of the Estate of JACOB STRAUT, Deceased.

Trustees of an express trust have the legal title to and are the legal owners of the personal property belonging to the trust estate.

In an action by such trustees against a stranger, alleged to have in his possession or to be liable to account for property belonging to the trust estate, to reduce such property to possession or to subject it to their control, or for an accounting, unless the action involves and requires the determination of rights as between the beneficiaries themselves, or as between them and the trustees, it is not necessary to make them parties (Code Civ.

Pro. 449), and in the absence of fraud or collusion they are bound by the result.

In proceedings in Surrogate's Court commenced by one claiming an interest as *cestui que trust* under the will of S. to compel the executor of E., the surviving executor and trustee under said will, to account for the trust estate, which the petitioner alleged went into the hands of E., and after his death into the hands of his executor, it appeared that prior to the death of E. other trustees were duly appointed in his place by the Supreme Court, and E. was enjoined from thereafter acting as trustee, that an action was brought by said new trustees against the executor of E., the complaint in which alleged the wasting and misappropriation of the estate by E., and that all the property of which he died seized belonged to plaintiffs as such trustees. The relief asked among other things, was that defendant as executor, account to the plaintiffs concerning the property and the income thereof which came into the hands of his testator under the will of S. Said action resulted in a judgment against the plaintiffs therein dismissing the complaint. *Held,* that the petitioner was bound by that adjudication, although not a party to the action; and that the same was a bar to the proceedings.

The petition was filed more than thirty years after the death of S., more than six years after the death of E., and more than four years after the death of H., to whom, by the will of S., the income of the trust fund was to be paid during life. *Held,* that after such a lapse of time the petitioner could not claim that doubtful questions of law or of fact should be resolved in his favor.

(Argued March 13, 1891; decided April 14, 1891.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made November 23, 1888, which affirmed an order of the surrogate of the county of New York denying an application for an accounting.

In December, 1887, Francis M. Hopper presented his verified petition to the surrogate of the county of New York, in which he alleged that Jacob Straut, late of the city of New York, died on the 6th day of April, 1857, leaving a last will and testament which was duly approved and admitted to probate on the 9th day of September thereafter; that in the will Edward J. Straut, Isaac Onderdonk and Jacob Cooper were appointed executors and trustees; that Cooper renounced and never qualified as such, and Onderdonk and Straut duly qualified, and letters testamentary were issued to them by the

surrogate on the ninth day of September; that they thereupon entered upon the discharge of their duties. as trustees and executors, and so continued until the death of Onderdonk in August, 1870; that thereafter Edward J. Straut continued to administer the estate as sole surviving executor until his death, and, as such, came into possession of all the assets of the estate; that Edward ·J. Straut died in the county of Rockland on the 10th day of September, 1881, leaving a last will whereby, among other things, Garret Z. Snider was made sole executor thereof; that that will was, on the 17th day of October, 1881, proved and admitted to probate in the Surrogate's Court of Rockland county, and letters testamentary thereon were granted and issued to Snider, who entered upon the discharge of his duties as such executor; that no account of the proceedings of the executors of Jacob Straut has ever been rendered by them or any of them, or by Snider as executor of Edward J. Straut; that an inventory of the personal estate of Jacob Straut was filed in the office of the surrogate of New York county on the 14th day of September, 1857, showing personalty of an aggregate appraised value of $6,300 and of the actual value of $9,105 but, as he was informed and believed, other property applicable to the uses of the trusts created by the will of Jacob Straut of the value of many thousand dollars came into the hands of Edward J. Straut as sole surviving executor, and after his death into the hands of his executor, Snider; that no account of such property and no inventory thereof has ever been made or filed by anyone; that in and by the will of Jacob Straut he devised and bequeathed to his executors and trustees one-seventh part of all his real and personal estate in trust to pay to his daughter Maria the income thereof annually, and after her death to her children and heirs, share and share alike, as the law directs in intestates' estates; that Maria Straut married Jacob A. Hopper and died in 1883, and that during their coverture she had children, Elizabeth who intermarried with Peter Ruton and died in 1878, leaving her surviving and now living of full age Joseph H. Ruton, her only issue, and the petitioner and Jacob H. Hopper, both of

full age and residing in the city of New York; and he prayed that a decree be made requiring Garret Z. Snider, as executor of Edward J. Straut, deceased, to render and judicially settle an account of the proceedings of Edward J. Straut as executor and trustee under the last will and testament of Jacob Straut, deceased, and to pay to the petitioner his share of the estate, and that Garrett Z. Snider be cited to show cause why he should not pay such share.

Snider, as executor of Edward J. Straut, appeared and answered the petition, and in his verified answer, denied any knowledge or information sufficient to form a belief whether Edward J. Straut, as sole surviving executor, came into possession of all the assets belonging to the estate of Jacob Straut, and whether no account of the proceedings of the executors of Jacob Straut had ever been rendered by them or either of them, and he denied that no account of the proceedings had ever been rendered by him, as executor of Edward J. Straut, as stated in the petition; he alleged that he had duly rendered an account of his proceedings as executor of Edward J. Straut, to the surrogate of Rockland county, and he denied any knowledge or information sufficient to form a belief as to what the value of the personalty of Jacob Straut was, or is, or that it came into the possession of Edward J. Straut, and as to what, if any, other property came into the hands of Edward J. Straut as such sole surviving executor, and denied that after the death of Edward J. Straut any property of Jacob Straut, or of his estate, came into his hands as executor of Edward J. Straut, or otherwise; he alleged, on information and belief, that prior to the death of Edward J. Straut, Jacob H. Conklin and Jacob A. Hopper, of the city of New York, were appointed trustees under the will of Jacob Straut, by the Supreme Court, and that they duly entered upon the discharge of their duties as such, and have ever since continued to act as such; that after their appointment Edward J. Straut exercised no control over the estate of Jacob Straut, and discharged none of the duties as executor or trustee thereof; that upon the application for the appointment of the trustees, or soon thereafter, Edward J.

Straut was enjoined from acting as such; that upon the appointment of the trustees all the assets of the estate of Jacob Straut, in the hands of Edward J. Straut or otherwise, came into the possession of the new trustees, and have ever since remained in their hands and under their control; that heretofore an action was brought in the Supreme Court of this state by the new trustees against him as executor of Edward J. Straut, in which Maria, the wife of Jacob A. Hopper, named in the petition, and all others interested in the estate of Jacob Straut were made defendants, and the complaint in that action is annexed to the answer; that in that action Maria Hopper, and some of the defendants, including him, Snider, as executor, interposed answers; that the issues raised by such answers were by order of the court referred to a referee to hear and determine, and a trial was had before such referee in which Maria Hopper, by her counsel, participated; that upon the decision and report of the referee, and proceedings thereupon, judgment was duly entered, from which an appeal was taken to the General Term, and from the judgment and decision of that court an appeal was taken to the Court of Appeals. The judgment directed by the Court of Appeals in accordance with its decision is made a part of the answer, and a copy thereof is annexed to it. The answer further alleged that all of the orders, judgment and the papers and records of the proceedings thereupon are duly filed and entered in the office of the clerk of the county of Kings; that as respondent is informed and believes all notices and papers and copies of the judgment were duly served on the attorney for Maria Hopper, and that in that action the plaintiffs, as trustees, represented, among others, the petitioner and his interest in the estate of Jacob Straut, and it was brought for their benefit and at their instance; that all the rights of Maria Hopper and all persons who could claim under her, including the petitioner in the estate of Jacob Straut, so far as the same had come into the hands of Edward J. Straut, and all claims against the latter as executor or trustee, or against the respondent as executor, were determined, and Maria Hopper was and the petitioner is for-

ever barred from making any claim against the respondent or his testator or his estate by such former adjudication; that the petitioner has no claim to any share of the estate of Jacob Straut which came into the hands of Edward J. Straut, or interest therein, or against the latter as executor or trustees, or against the respondent as executor or otherwise, and no right to claim the accounting asked for.

The will of Jacob Straut is set forth in the record, in which he directed his estate to be divided into seven equal parts, which he gave and devised to the executors and trustees named in his will, in trust, to pay the income of one of said parts annually to each of his six living children for the use of each child, and in trust, after the decease of any child, to pay the same over to the heirs and children of such child, share and share alike, as the law directs in the case of intestacy. There was a similar trust for the benefit of a grandchild, the daughter of a deceased daughter. The tenth clause of the will is as follows:

" It is my will and the object of all the provisions and trusts made and created by me in this my will, that my said executors and trustees pay over to the lawful issue of any of my children before named after their decease the share or portion remaining in their hands of said income and principal money, should such issue prove worthy and capable of holding the same after they shall arrive at the age of twenty-one years; but if not capable or worthy then to receive the income thereof as their parents have not until such times as my executors shall deem fit and their necessities require, leaving it discretionary with them to act in the premises, except that Elizabeth Springsteen is to receive not more than the income of said portion or seventh part annually as aforesaid. I do also appoint my executors and trustees aforesaid, guardians of the persons and estates of all my grandchildren that may be entitled to a part of my estate, and also the children of my granddaughter Elizabeth Springsteen, if she should leave any; during their minority said property to remain in the hands of my said executors and trustees, guardians as aforesaid, together with

the annual income thereof, and kept at interest until they shall arrive at the age of twenty-one years, at which time I leave it to their sound judgment to pay the same or withhold it, except that Elizabeth Springsteen is to receive not more than the income of said portion or seventh part annually as aforesaid, and pay the income thereof only to such of them as may become entitled thereto as aforesaid, annually, and to pay the principal at such times and in such manner as they may deem best calculated to carry out, according to my intentions, the provisions of this my will, except that Elizabeth Springsteen is to receive not more than the income of said portion or seventh part annually as aforesaid, it being my intention that all and each of said grandchildren and children of said Elizabeth Springsteen (if she should leave any) should know the value of property when they get it, that they may make proper use of the same. It is further my will that in case any of my children aforesaid should die without leaving lawful issue from his or her body begotten, that then the share and portion coming to them, or either of them, out of my estate, shall go to the brothers or sisters of such deceased person or persons, or his or her or their legal representatives in the same manner as in intestates' estates."

The testator authorized his executors to lease his real estate and empowered them to sell and dispose of the same should it become necessary so to do in order to make a more equal division of his estate and fulfill the trusts above mentioned.

The suit referred to in the answer was commenced in April, 1882, by Conklin and Hopper as new trustees appointed as stated above, and there were joined as defendants in that suit, Snider, as sole executor of Edward J. Straut, the widow and children of Edward J. Straut, and certain of the beneficiaries under Jacob Straut's will, including the living life beneficiaries, but the petitioner herein was not made a defendant. The complaint in that action alleged the facts contained in the petition and answer in reference to the death of Jacob Straut and his will, and the amount of real and personal property left by him. It alleged the wasting and misappropriation of

the estate of Jacob Straut by Edward J. Straut, and that he did not keep any proper account of the estate that came into his hands under the will of Jacob Straut; that his estate was wholly insolvent and the whole thereof was insufficient to satisfy the claims of the plaintiffs as such trustees, and that all the property of which Edward J. Straut died seized and possessed belonged to them as such trustees, and they prayed judgment against the defendant Snider as executor, among other things, that he account to the plaintiff of and concerning all the funds and property and proceeds, profits and income of property, real and personal, which came into the hands of his testator in trust under the will of Jacob Straut.

The report of the referee and the judgment in that action thereon do not appear in this record. The decision was in favor of the plaintiffs, but upon what ground, or for what amount, or to what extent, do not appear. The defendant Snider appealed to the General Term, and there the judgment was reversed and a new trial ordered. From the order of reversal, the plaintiffs in that action appealed to this court giving the usual stipulation required on such an appeal, and in this court the order was affirmed and judgment absolute was rendered against the plaintiffs dismissing the complaint.

In the Surrogate's Court this matter was submitted to the surrogate upon the petition and answer, and the papers annexed to the answer, and the prayer of the petition was denied.

*W. J. Hardy* for appellant. The language of the answer has not the force of an allegation of a fact. The petition and answer in a special proceeding are *quasi* pleadings, and by analogy to the rules of pleading in an action, new matter in an answer must be deemed to be controverted. And the general form of the allegation, as a conclusion from more particular facts, could only be permitted in a pleading as distinguished from an affidavit. If the answer be treated as an affidavit, it is vicious, as a statement upon information and belief without giving the sources of the information. (*Steuben Bank* v. *Alberger*, 78 N.

Y. 258; *Mowry* v. *Sanborn*, 65 id. 584; *Cribben* v. *Schillinger*, 30 Hun, 248.) The judgment in *Conklin* v. *Snyder*, is no bar to this proceeding. (*Stevenson* v. *Lesley*, 70 N. Y. 512; *Crooke* v. *County of Kings*, 97 id. 451; *In re Livingston*, 34 id. 573; *Graham* v. *De Witt*, 3 Bradf. 186; *Genet* v. *Hunt*, 113 N. Y. 158; *Henderson* v. *Henderson*, Id. 1.) The petitioner here was a party in interest in Jacob Straut's estate, and if the suit of *Conklin* v. *Hopper* was instituted for any purpose beyond that of the recovery of title to the lands standing in the defaulting trustee's name, as, for instance, an accounting as to Jacob Straut's estate, then the petitioner was a necessary party to that action, and not having been brought in cannot be barred by a judgment therein against the trustees. (*Hubbell* v. *Medbury*, 53 N. Y. 98; *Riggs* v. *Cragg*, 89 N. Y. 488; Code Civ. Pro. § 2606; *Walton* v. *Walton*, 2 Abb. [N. S.] 428; *In re Willett*, 15 N. Y. S. R. 445.) The judgment in *Conklin* v. *Snider* was not an adjudication upon the merits, but is based upon a technical stipulation. Such stipulation was personal to those who entered into it, and is binding, if at all, upon them only. (*Williams* v. *W. U. Tel. Co.*, 93 N. Y. 194; *People* v. *Thacher*, 55 N. Y. 525; *Bell* v. *Merrifield*, 109 N. Y. 202.) The claim made against the respondent as executor of the defaulting trustee is not a bar here. (Code Civ. Pro. § 2606; Redf. on Surrogates, 658.)

*Irving Browne* for respondent. The appellant is bound by the judgment in the action by the trustees. They were the proper persons to institute and carry on the proceeding required for the protection of the estate and all persons interested therein. If they have failed in their duty the remedy of appellant is against them. (*Weetjen* v. *Vibbard*, 5 Hun, 265; *W. R. R. Co.* v. *Nolan*, 48 N. Y. 513; *Schultz* v. *Cookingham*, 30 Hun, 443.) Appellant's claim was denied by the answer, and a dismissal of the application was proper. Under such circumstances the surrogate could not proceed without the presence of all the parties interested in the estate, including the trustees. (*Riggs* v. *Cragg*, 89 N. Y. 47.)

EARL, J.   Nothing was presented to the surrogate but the petition and answer, and upon them he was asked to make his decision.   The petitioner offered no proof and asked for no time that he might introduce proof.   The order of the surrogate recites that it was made upon the petition and answer, after hearing counsel for the petitioner and for Snider.   Under such circumstances, it is not entirely plain what facts we have before us, or what facts must be assumed to be true.   The material allegations of the petition, so far as they show any legal liability of Snider to account as executor of Edward J. Straut, were denied.   He put in issue the allegations of the petition that the property of Jacob Straut came into the possession of Edward J. Straut, and denied that after the death of Edward J. Straut any of the property of Jacob Straut, or of his estate, came into his hands.   Assuming these denials to be true, what account could Snider render?   Then, there is nothing for him to account for.   Before Snider, as executor of Edward J. Straut, could be called upon to render any account as to the estate of Jacob Straut, it may be at least plausibly claimed that the petitioner should have furnished some proof that some portion of that estate came into the hands of Edward J. Straut, and that he had not in his life-time accounted therefor.

But, if we assume, as was probably assumed by the surrogate, that the allegations contained in the petition, and the admissions contained in the answer together would otherwise have been sufficient to authorize an order against the defendant by the surrogate, requiring him to render an account, we think the action brought in the Supreme Court furnished a complete answer to the petition.   That was an action brought by the trustees under the will of Jacob Straut, to compel Snider as the executor of Edward J. Straut, among other things, to account for all the property that came to Edward J. Straut, as executor of Jacob Straut.   The allegations were full and ample, if sustained by proof, to authorize a judgment against Snider for an accounting and for any balance that might be found due upon such accounting.   The result of that litigation,

after a trial and the decision of all the courts, was a judgment dismissing the complaint upon the merits. If the petitioner claimed that that judgment was not based upon the merits, or that for any reason the adjudication proceeded upon some ground that would not be a bar to the accounting sought in this proceeding, he should have shown it by competent evidence. In the absence of any proof, it must be assumed that that litigation involved everything alleged in the complaint, and that the adjudication covered the whole ground of the complaint, and that thus, as against the plaintiffs in that action, it was a final adjudication that Snider, as executor of Edward J. Straut, was not bound to account for any of the estate of Jacob Straut, and that as such executor, nothing was due from him to such estate or to the trustees thereof.

But this petitioner claims that he is not bound by that adjudication for the reason that he was not a party to that action. It is the general rule, undoubtedly, that one is not bound by an adjudication in an action to which he is not a party. But to this rule there are many well-recognized exceptions. Executors, administrators, assignees and receivers all act representatively as trustees of other persons, and yet in actions brought by them to recover trust property or to reduce trust property to possession, the beneficiaries and parties ultimately entitled to the benefit of the property are not necessary parties. Here these trustees, appointed to take the place of the trustees under the will of Jacob Straut, had the legal title to, and were the legal owners of the personal property belonging to the trust estate (*T. G. T. Co.* v. *C., B. & Q. R. R. Co.*, 123 N. Y. 37); and it has never been held that in an action by the trustees to reduce such property to possession, or to subject it to their control, it is necessary to make the beneficiaries parties. In such an action they represent the whole title and interest, and their action, in the absence of fraud or collusion, is binding upon the beneficiaries. In the action brought by these trustees there was no question between them and the beneficiaries, and no question between the beneficiaries themselves. The only question at issue was between the trustees and a stranger to

the trust, who was alleged to have in his possession, or to be liable to account for, certain property belonging to the trust, and in such an action it is well settled now that the beneficiaries are not necessary parties. (*Horsley* v. *Fawcett*, 11 Beav. 565 ; *Goldsmid* v. *Stonehewer*, 9 Hare App. 38 ; *Doody* v. *Higgins*, Id. 32 ; *Fowler* v. *Bayldon*, Id. 78 ; *Adams* v. *Bradley*, 12 Mich. 346 ; *Ashton* v. *Atlantic Bank*, 3 Allen, 217 ; *Boyden* v. *Partridge*, 2 Gray, 190 ; *Cary* v. *Brown*, 92 U. S. 171 ; *Kerrison* v. *Stewart*, 93 id. 155 ; *Western R. R. Co.* v. *Nolan*, 48 N. Y. 513.) If the purpose of the action had been, among other things, to determine rights as between the beneficiaries themselves, or as between the trustees and the beneficiaries, then it would have been necessary to bring them in as parties. The rule is thus laid down in Perry on Trusts, section 328 : " It is the duty of a trustee to defend and protect the title to the trust estate, and as the legal title is in him, he alone can sue and be sued in a court of law. The *cestui que trust*, the absolute owner of the estate in equity, is regarded in law as a stranger." In Story's Eq. Pleadings (9th ed.), p. 192, note a, it is said : " Where a suit, brought by a trustee to recover the trust property, does not give rise to any conflict of interests between the *cestui que trusts*, and does not involve an investigation into their relations with each other, the *cestui que trusts* are not necessary parties." In *Western R. R. Co.* v. *Nolan* (*supra*), it was held that trustees who have the title to the trust fund are the proper parties plaintiff in an action to maintain and defend the fund against wrongful attack or injury tending to impair its safety or amount, and that neither the *cestui que trust* nor other beneficiaries can maintain such an action against a third person, except in case the trustees refuse to perform their duty, and then the trustees should be made parties defendant. In *Cary* v. *Brown* (*supra*), it was held that a suit brought by a trustee to recover trust property, or to reduce it to possession, in no wise affects his relations with his *cestui que trusts*, and it is unnecessary to make them parties. In *Horsley* v. *Fawcett* (*supra*), the master of the rolls says : " If the object of the bill were to recover the fund with a view to its

administration by the court, the parties interested must be present; but it merely seeks to recover the trust moneys, so as to enable the trustee hereafter to distribute them conformably with the trust declared. It is, therefore, unnecessary to bring before the court the parties beneficially interested."

These trustees could have accounted and settled with Snider and discharged him without suit, and such settlement, if fairly and honestly made, would have been binding upon the beneficiaries. The rule as to the maintenance of actions by trustees in their own names, without the presence of the beneficiaries as parties, is somewhat enlarged by section 449 of the Code, which provides that a trustee of an express trust may sue without joining with him the person for whose benefit the action is prosecuted; and wherever a trustee may sue in his own name without joining the beneficiaries of the trust, in the absence of fraud or collusion, the beneficiaries are bound by the results of the action. If the trustees in that action had prevailed and recovered any property from Snider therein, the recovery would have inured to the benefit of this petitioner and all the other beneficiaries under the will of Jacob Straut. As Snider would have been bound by the judgment, as between him and any and all of the beneficiaries in the event of success by the plaintiff in that action, so they are bound by the results of the action in the event of his success.

But it is claimed on behalf of the petitioner that the trustees were not trustees for him and did not represent him, and that as to one-seventh of the estate of Jacob Straut they were the trustees of his mother Maria Hopper and represented her only. In this the learned counsel for the petitioner is clearly mistaken. These trustees were to take the trust estate and hold it and manage it as trustees and pay the income thereof to Maria Hopper during her life, and after her death to pay the principal and remaining income to her children, share and share alike. During her life-time they held the principal of the estate, not only for her benefit, but for the benefit of her children, and after her death they had a trust duty to perform. By the tenth clause of the will the trust would continue after

the death of Maria Hopper until her children reached majority, and might continue longer. Therefore, in holding and controlling the trust estate, and in reducing it to possession, the trustees represented not only the life beneficiaries, but those who were to take after their death. The suit brought by the trustees against Snider and others was really a litigation between them and Snider, and no other persons were necessary parties. The trustees, as plaintiffs, represented all the parties beneficially interested in the trusts under the will of Jacob Straut, and none of the persons thus benefically interested were necessary parties. Snider, as defendant, represented all the parties interested in the estate of Edward J. Straut, and none of them were necessary parties defendant to the accounting between the plaintiffs and Snider. No relief in that action was prayed for against anyone except Snider. It does not appear that there was any adjudication against anyone except Snider, and when he procured a reversal of the judgment rendered against him upon the report of the referee and final judgment dismissing the complaint, there was nothing left of that action or of the adjudication therein.

The petitioner filed his petition on the 14th day of December, 1887, more than thirty years after the death of Jacob Straut, more than six years after the death of Edward J. Straut, and four years after the death of Maria Hopper. After the lapse of so much time he cannot well claim that doubtful questions of law or of fact should be resolved in his favor.

The order of the General Term should be affirmed, with costs.

All concur.

Order affirmed.