JOHN L. JACKSON, Respondent, *v.* RUBY H. TALLMADGE et al., Appellants.

Fraudulent conveyance — debtor and creditor — parties — assignment by wife of insurance policy on life of husband mailed to brother in this State — no presumption of acceptance — death of husband and formation by brother of trust of proceeds of policy — transfer took place only on formation of trust and trustee took subject to rights of creditors — son not necessary party in action to set aside trust as fraudulent.

1. Where a resident of a foreign State insured his life for the benefit of his wife and thereafter, both having become insolvent, she mailed an assignment of the policy to her brother in this State with a statement that she would explain the object on meeting him, her intention being to apply to him for loans on the strength of the security, but her husband dying three days later, she came to this State and explained to her brother that the proceeds of the policy must be preserved for the support of herself and son, whereupon a trust was declared, transfer of the policy was effected in this State and title did not pass until the creation of the trust.

2. If delivery before death of the husband be assumed, it did not divest title until acceptance and under the circumstances acceptance

will not be presumed; furthermore, the assignee could accept nothing but what was then intended, a mere pledge. The trustee, therefore, took subject to the rights of creditors and an action may be maintained to set aside the transfer as fraudulent.

3. A contention that the son should have been joined as a defendant and that no decree may be pronounced without him cannot be sustained. There is no question at issue between trustee and beneficiaries or between the beneficiaries themselves. The question is between the trustee and a creditor, a stranger to the trust, who insists that the title to the fund is subject to his lien. In a suit for such relief, the trustee represents the beneficiaries, and defends in their behalf. (*First Nat. Bank* v. *Shuler*, 153 N. Y. 163; *Cook* v. *Lake*, 50 App. Div. 92, distinguished.)

*Jackson* v. *Tallmadge*, 216 App. Div. 100, affirmed.

(Argued June 20, 1927; decided July 20, 1927.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered September 27, 1926, modifying and affirming as modified a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

*Frank H. Hiscock* and *Hampton H. Halsey* for appellants. The assignment in question was consummated and, therefore, the contract made in New York State and its validity is to be tested by the laws of that State. Under those laws the interest of a wife during the life of her husband in a policy issued upon his life and payable to her as beneficiary is not reachable by her creditors and, therefore, she may do with it as she pleases. (*N. W. Mut. Life Ins. Co.* v. *Adams*, 155 Wis. 335; *N. W. Mut. Life Ins. Co.* v. *Wright*, 153 Wis. 252; *Kaufman* v. *State Savings Bank*, 151 Mich. 65; *Van Buskirk* v. *Warren*, 4 Abb. Ct. App. Dec. 457; *Union Bank* v. *Chapman*, 169 N. Y. 538; *Griffin* v. *Brooklyn Ball Club*, 68 App. Div. 566; 174 N. Y. 535.) The assignment was an absolute one when made during the life of the husband and, therefore, valid. Whatever agreement as to the proceeds was subsequently made was detached from the original

assignment, was a voluntary act on the part of the assignee and did not impair the validity of the original assignment whereby the wife divested herself of rights under the policy.    Moreover, the alleged trust was valid. (*Smillie* v. *Quinn*, 90 N. Y. 492.)

*Charles H. Newman* for respondent.    The validity of an assignment of a policy of life insurance is governed by the law of the place where the assignment is made.    (*Dike* v. *Erie Railway*, 45 N. Y. 113; *Barry* v. *Equitable Life Assur. Soc.*, 59 N. Y. 587; *Miller* v. *Campbell*, 140 N. Y. 457; *Spencer* v. *Myers*, 150 N. Y. 269; *Grand* v. *Livingston*, 4 App. Div. 589; 158 N. Y. 688; *Lee* v. *Abdy*, L. R. 17 Q. B. D. 309; *Conn. Mutual Life Ins. Co.* v. *Westervelt*, 52 Conn. 586; *Union Cent. L. Ins. Co.* v. *Woods*, 11 Ind. App. 335; *Pratt* v. *Globe Mutual Life Ins. Co.*, 17 S. W. Rep. [Tenn.] 352.)    The assignment by the defendant Tallmadge was made in North Dakota.    (*Barry* v. *Equitable Life Assur. Soc.*, 59 N. Y. 587; *Hurlbut* v. *Hurlbut*, 49 Hun, 189; *McDonough* v. *Ætna Life Ins. Co.*, 38 Misc. Rep. 625; *Alexander* v. *Steinhardt, Walker & Co.*, L. R. 2 K. B. 208; *Northwestern Mut. Life Ins. Co.* v. *Wright*, 153 Wis. 252; Williston on Contracts, 186, § 97.) The agreement between the defendant Tallmadge and the defendant Halsey creating a trust in the insurance proceeds for the benefit of the defendant Tallmadge was made in the State of New York after the maturity of the policy and was fraudulent and void under the laws of the State of New York.    (*Bolt* v. *Keyhoe,* 30 Hun, 619; 96 N. Y. 646; *Crosby* v. *Stephan,* 32 Hun, 478; *Commerc. Travelers' Assn.* v. *Newkirk,* 16 N. Y. Supp. 177; *Amberg* v. *Manhattan Life Ins. Co.,* 171 N. Y. 314; *Schenck* v. *Barnes,* 156 N. Y. 316; *Young* v. *Heermans,* 66 N. Y. 374; *Sutherland* v. *Bradner,* 116 N. Y. 410; *Warner* v. *Lake,* 140 N. Y. 619.) The court may decree that the plaintiff's judgment be paid out of the proceeds of the policy in suit without injustice to Edgar Tallmadge, infant son of the defendant

Tallmadge. (*Fort Stanwix Bank* v. *Leggett*, 51 N. Y. 552; *Amer. Bible Society* v. *Price*, 115 Ill. 623; *Young* v. *Heermans*, 66 N. Y. 374; *Wakeman* v. *Grover*, 4 Paige Ch. 23; *Sweet* v. *Parker*, 22 N. J. Eq. 453.)

CARDOZO, Ch. J.    The action is by a judgment creditor to set aside a transfer in fraud of creditors.

Carl E. Tallmadge, a resident of North Dakota, insured his life in the sum of $25,000 for the benefit of Ruby H. Tallmadge, his wife, the policy being issued by a South Dakota insurance company.  Both husband and wife became insolvent, and were threatened with prosecution, civil and criminal.  At the same time the husband became critically ill.  On February 3, 1923, the wife, then in North Dakota, mailed an assignment of the policy to her brother, the defendant Halsey, in Rochester, New York, intending to apply to him for loans on the strength of this security.  Accompanying the assignment was a letter from her lawyer to the effect that on meeting her brother she would explain to him the object of the instrument.  The brother had no information in advance that the transfer was to be made.  He knew, however, in a general way that the sky was darkened by financial troubles.  Upon receiving the assignment on February 7, 1923, he understood at once that the policy was to be held for his sister subject to her use.

Three days later Carl E. Tallmadge died.  His widow brought the body to New York for burial, and was met on arrival by her brother.  She explained to him that she was without means for her own and her son's support, and that the proceeds of the policy must be kept beyond the reach of creditors.  A trust was then and there declared.  There is some conflict in the findings as to its terms.  One set of findings is to the effect that the trust was for the benefit of Ruby Tallmadge solely.  Another set is to the effect that the trust was for her benefit and her son's " as their needs should arise, subject

to her orders." The plaintiff, a New York judgment creditor, assails the trust as fraudulent.

Under the law of New York, a policy of insurance upon the life of a husband for the benefit of his wife is withdrawn in large degree from pursuit by his creditors and also from pursuit by hers (*Eadie* v. *Slimmon,* 26 N. Y. 9; *Smillie* v. *Quinn,* 90 N. Y. 492; *Miller* v. *Campbell,* 140 N. Y. 457). She may assign it with his consent, but not otherwise (Domestic Relations Law; Cons. Laws, ch. 14, § 52). The creditor gains nothing by the mere appointment of a receiver or other transfer *in invitum* (*Smillie* v. *Quinn, supra*). All this is true, however, only while the husband lives and the policy is yet outstanding. At once upon maturity, it is assignable without restriction and subject like other assets to seizure for the use of creditors (*Amberg* v. *Manhattan Life Ins. Co.,* 171 N. Y. 314).

The question has been much debated in this case whether the assignment became effective in North Dakota or in New York. There is no evidence in the record that North Dakota has a statute similar to our own. The Special Term applied the law of New York, but even on that basis held the transfer to be fraudulent. The Appellate Division came to the same result, but applied the law of North Dakota, holding that the assignment was delivered when deposited in the mails and that there was a presumption of acceptance as in cases of a gift.

We think the transfer of the policy was effected in New York and that title did not pass until the declaration of the trust. There is no need to determine whether the deposit in the mails without previous request or knowledge of the person named as assignee was equivalent to delivery. There may be significance in the fact that the document was still subject to recall upon notice to the post office (U. S. Postal Laws & Regulations, §§ 531, 533; *Crown Point Iron Co.* v. *Ætna Ins. Co.,* 127 N. Y. 608, 618,

[246 N. Y. 133]        Opinion, per CARDOZO, Ch. J.        [July,

619; *Gately-Haire Co.* v. *Niagara Fire Ins. Co.*, 221 N. Y. 162). If delivery be assumed, however, it did not divest title until coupled with acceptance. Instances there may be of a transfer so plainly beneficial that acceptance is presumed (*Albany Hospital* v. *Albany Guardian Soc.*, 214 N. Y. 435, 442; *Munoz* v. *Wilson*, 111 N. Y. 295, 304). There was no such transfer here. The assignee was not expected to gain any benefit at all. He was to assume responsibilities without profit. He was to act as a buffer between his sister and her creditors, who might be counted on to pester him with lawsuits and trouble him in other ways. There is no presumption of a willingness to stand in such a breach (*Pitkin* v. *City of Montpelier*, 85 Vt. 467, 473).

We do not overlook a statement by the brother, confirmed by a finding of the court, that at once upon receipt of the document he resolved to accept any trust that might be necessary to give effect to his sister's purpose, whatever it might be. At that time her purpose was to use the assignment as a pledge to secure expected loans. Acceptance of such security did not divest the pledgor's interest as equitable owner, but left it unimpaired, subject only to the lien of advances to be made. The pledgee, however complaisant, could accept nothing more, for nothing more was then intended. Not till the meeting in New York was there an attempt to turn the pledge or mortgage into an assignment of the title subject to a trust. At that time the policy had already matured. Acceptance was then impossible except subject to the rights of creditors (*Amberg* v. *Manhattan Life Ins. Co.*, *supra*).

The conclusion thus reached makes it unnecessary to consider whether a like goal could be attained by travel along other paths (Pers. Prop. Law; Cons. Laws, ch. 41, § 34).

A point is now made, though without plea of defect of parties or even objection at the trial, that the son

should have been joined as a defendant, and that no decree may be pronounced without him (Civil Prac. Act, § 193). There is no question at issue between trustee and beneficiaries or between the beneficiaries themselves (*Matter of Straut*, 126 N. Y. 201, 211, 212). The question is between the trustee and a creditor, a stranger to the trust, who insists that the title to the fund is subject to his lien. In a suit for such relief, the trustee represents the beneficiaries, and defends in their behalf (*Matter of Straut, supra; Sweet* v. *Parker*, 22 N. J. Eq. 453, 455, 456; *Tucker* v. *Zimmerman*, 61 Ga. 599; *Vetterlein* v. *Barnes*, 124 U. S. 169, 172; Pomeroy, Remedies & Remedial Rights, § 357). " Where the complainant claims in opposition to the assignment or deed of trust, and seeks to set the same aside on the ground that it is fraudulent and void, he is at liberty to proceed against the fraudulent assignee or trustee, who is the holder of the legal estate of the property, without joining the *cestui que trust* " (*Rogers* v. *Rogers*, 3 Paige, 379, 380).

We think the interest of the son, if any, is not of such a nature that the court is under a duty to refuse in his absence to adjudicate the issues. The findings leave it uncertain, to say the least, whether he had any property interest subject to be protected. No payments were to be made to him except upon his mother's orders. Only a strained view of the transaction would see in it an intention to clothe him with any right or interest in the fund that would be good against her protest (1 Perry on Trusts, § 117). If any shred of right existed, it has been cut off after adequate representation by force of this decree.

Cases tending superficially to uphold a different ruling, are distinguished when their facts are stated. *First National Bank* v. *Shuler* (153 N. Y. 163) was a suit where the omitted defendant was the creator of the trust. Apart from his interest in the surplus, " he had the right to contend that his estate should be distributed

under the terms of the assignment, and that it was a valid and not a fraudulent instrument" (153 N. Y. at p. 168). *Cook* v. *Lake* (50 App. Div. 92) was a suit where a fraudulent grantee had made a conveyance to another, not joined as a defendant, who held the legal title. Here the creator of the trust and the holder of the legal title are parties to the suit and have defended for themselves and for those they represent.

The judgment should be affirmed with costs.

Pound, Crane, Andrews, Lehman and O'Brien, JJ., concur; Kellogg, J., not sitting.

Judgment affirmed, etc.